IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION


ADAM STRINGER                                                                                    PLAINTIFF

VS.                                                                    CIVIL ACTION NO. 2:10cv34KS-MTP

GMAC FINANCIAL SERVICES CORPORATION and
WEST ASSET MANAGEMENT INC.                                                        DEFENDANTS


## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a Motion to Stay [Doc. # 8] and Compel Mediation and/or Arbitration [Doc. # 9] filed by Defendant GMAC, Inc., ("GMAC"), improperly identified in the complaint as GMAC Financial Services Corporation. The Court, having reviewed the motions, the various responses and replies, all matters made a part of the record of this case as well as applicable law, and thus being fully advised in the premises, finds that both motions should be **granted**. The Court specifically finds as follows:


## I. BACKGROUND

On June 10, 2005, Anna B. Powers as buyer and Plaintiff Adam Stringer as co-buyer entered into a retail sale contract for a 2005 Saturn Ion with KMS Inc. d/b/a Saturn of Jackson. KMS, as a part of the sale contract, assigned its interest to General Motors Acceptance Corporation (GMAC). Mot. to Compel, Ex. A [Doc. # 9-2]. The contract specifically states:

> You agree to the terms of this contract and the GMAC Dispute Resolution Agreement. You confirm that before you signed this contract and the GMAC Dispute Resolution Agreement, we gave them to you, and you were free to take

1

> them and review them.
>
> ...
>
> If we assign this contract to General Motors Acceptance Corporation (GMAC),
> the GMAC Dispute Resolution Agreement you sign with this contract will apply
> to claims related to this contract.

*Id.* at Ex. A. The Sale Contract contains both a right of repossession for breach of the contract and a right of redemption. The contract is signed by a KMS representative, Powers, and Stringer.

The GMAC Dispute Resolution Agreement states that the Federal Arbitration Act governs the agreement and requires that the parties mediate any dispute between the buyer and GMAC "related to (a) the retail installment sale or lease of the vehicle described below or (b) the scope of this Agreement." Mot. to Compel, Ex. B [Doc. # 9-3]. If mediation fails, the parties agree to arbitration. The Agreement states:

> This Agreement binds the person(s) signing below and their heirs and
> representatives ('you") and General Motors Acceptance Corporation and its
> agents, affiliates, assignees, and employees ("GMAC").

*Id.* at Ex. B. The Dispute Resolution Agreement is signed by Powers and Stringer. "GMAC" is typed in the GMAC signature line.

Stringer has brought suit against GMAC alleging that he was the owner of the vehicle and that GMAC wrongfully repossessed the Saturn after Stringer paid the redemption fee for the vehicle. He also alleges that GMAC failed to return his personal property that was in the car when it was repossessed.

## II. STANDARD OF LAW

Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, provides that where a

party has refused to arbitrate under a written arbitration agreement, the other party may petition the court for an order compelling arbitration, and the court shall order the parties to arbitrate if it is satisfied that the making of the agreement is not in issue.[1]

A two-step analysis is applied to determine whether a party may be compelled to arbitrate. *Sherer v. Greentree Serv.*, 548 F.3d 379, 381 (5th Cir. 2008) (*citing J.P. Morgan Chase & Co. v. Conegie*, 492 F.3d 596, 598 (5th Cir. 2007). First, we ask if the party has agreed to arbitrate the dispute. *Id.* If so, we then ask if "any federal statute or policy renders the claims nonarbitrable." *Id.* (*quoting Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004)). That first step itself contains two questions: (1) is there a valid agreement to arbitrate the claims and (2) does the dispute in question fall within the scope of that arbitration agreement. *Id.* These questions are decided according to state law. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004) (*quoting Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)). "While there is a strong federal policy favoring arbitration, the policy does not apply to the initial determination whether there is a valid agreement to arbitrate." *Id.* (*citing Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)); *see also Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) ("[T]he FAA does not require parties to arbitrate when they have not agreed to do so."). "Nonetheless, once a court determines that an agreement to arbitrate exists, the court must pay careful attention to the strong federal policy favoring arbitration and must resolve all

---

[1] The FAA applies to all transactions "involving commerce." *See* 9 U.S.C. §§ 1,2. Stringer entered into a retail sale contract for a vehicle in interstate commerce. The court therefore finds that the loan agreement in this dispute has a nexus to interstate commerce and the FAA applies.

3

ambiguities in favor of arbitration." *Banc One,* 367 F.3d at 429 (citations omitted). Neither party contends that a federal statute or policy precludes enforcement of the arbitration clause. Therefore, our analysis focuses on whether the parties have agreed to arbitrate the dispute.

### III. APPLICATION AND ANALYSIS

The Retail Sale Contract and the incorporated GMAC Dispute Resolution Agreement are valid binding contracts between Stringer and GMAC, Inc., because GMAC, Inc. is an assignee of General Motors Acceptance Corporation (GMAC), the original party to the agreement. As a general rule, the assignee essentially "stands in the shoes" of the assignor and takes whatever rights the assignor possessed. *See S. Miss. Planning & Dev. Dist. v. Alfa General Ins. Corp.*, 790 So.2d 818, 821 (Miss. 2001). "'The logical inversion of this rule dictates that the assignee must acquire all those rights, interests and remedies available to assignor... .'" *Id.* at 821-22 (quoting *Ford v. White*, 495 So.2d 494, 497 (Miss. 1986)). General Motors Acceptance Corporation, a Delaware corporation, converted to GMAC, LLC, on July 20, 2006, which converted to GMAC, Inc., on June 13, 2009. *See* Reply Supp. Mot. to Stay ¶ 2 [Doc. # 12]. The dispute resolution agreement expressly states that the agreement binds the signing parties and GMAC's assignees. Therefore, GMAC, Inc. may properly enforce the arbitration agreement between itself and Stringer.

Stringer argues that the contract is not binding because General Motors Acceptance Corporation, the party to whom the contract was initially assigned, does not appear as an active company in a search of the Mississippi Secretary of State records. *See* Resp. Mot. to Compel, Ex. 2 [Doc. # 11-3]. However, the second search result, listing General Motors Acceptance

4

Corporation's status as withdrawn, indicates that this Delaware corporation was incorporated in 1997 and was dissolved in 2008. Delaware public records shows the corporation's conversion to GMAC, LLC, and then to GMAC, Inc., as laid out above.

Finally, Stringer argues that even if GMAC, Inc. was the assignee of General Motors Acceptance Corporation, the original parties did not mutually agree to mediation and/ or arbitration because a representative of GMAC did not sign the Dispute Resolution Agreement. Instead, GMAC was typewritten into the signature blank on the agreement. In support of his position, Stringer cites *Lisa Byrd, Aurora Cares, LLC., et. al. v. Simmons*, 5 So.3d 384 (Miss. 2009). In this case, the Mississippi Supreme Court held that an arbitration contract between a nursing home and patient was unenforceble because it had not been signed by the nursing home and had been revoked in writing by the patient's son, her designated representative. *Id.* at 389. However, the Court noted:

> [A] signature is not always essential to the binding force of an agreement, and whether a writing constitutes a binding contract even though it is not signed or whether the signing of the instrument is a condition precedent to its becoming a binding contract usually depends on the intention of the parties. The object of a signature is to show mutuality or assent, but these facts may be shown in other ways, as, for example, by the acts or conduct of the parties."

*Id.* The Court in the *Byrd* case found that the arbitration agreement and nursing home admission agreements were separate "stand alone" agreements and that the nursing home had not manifested its consent to arbitrate through its conduct of admitting the patient.

The agreements in this case are easily distinguishable. Here, the Sale Contract specifically referenced the applicability of GMAC's Dispute Resolution Agreement. The sale contract states that the parties will agree to terms of the sale contract as well as the Dispute

5

Resolution Agreement. In other words, all parties mutually assented to the terms of the arbitration agreement in the sale contract, which was signed by Stringer, Powers, and a representative of KMS, Inc. d/b/a Saturn of Jackson. As noted by GMAC, the terms of the Dispute Resolution Agreement are incorporated by reference into the sale contract and both parties indicated their mutual assent to the mediation/ arbitration terms by signing the sale contract.

Even if the sale contract did not incorporate the terms of the GMAC Dispute Resolution Agreement, GMAC's pre-printed, typed "signature" on the Dispute Resolution Agreement is likely enough to show mutual assent even as a stand alone contract. As GMAC notes in its brief, the Mississippi Supreme Court has long held that a typewritten signature can be binding if the party to be bound wrote it or authorized it to be done. *See Edward Thompson Co. v. Foy*, 76 So. 685, 686 (Miss. 1917)*; see also* MISS. CODE ANN. § 75-1-201(39) ("'Signed' includes any symbol executed or adopted by a party with present intention to authenticate a writing."); *Dawkins & Co. V. L & L Planting Co.,* 602 So.2d 838, 844 (Miss. 1992) ("the letter of September 3 on Dawkins' letterhead, bearing his address, which referred to and recited the contract terms, requested execution of the previously delivered forward contract, and included the typewritten name of the sender on the line where a manual signature is usually made, was a sufficient 'writing in confirmation of the contract and sufficient against the sender.'"). GMAC provided the Dispute Resolution Agreement and indicated its assent to the terms by typing GMAC in the signature blank. Therefore, the Court finds that both parties mutually assented to mediation and/ or arbitration.

## IV. CONCLUSION

Having found that the parties in the case entered a valid and binding agreement to resolve any dispute arising from their sale contract through mediation and/ or arbitration, the Court finds that this case should be stayed pending the dispute resolution methods provided for in the agreement.

IT IS, THEREFORE, ORDERED AND ADJUDGED that Defendant's Motion to Compel Mediation and/or Arbitration [Doc. # 9] is **granted.**

IT IS FURTHER ORDERED AND ADJUDGED that Defendant's Motion to Stay [Doc. # 8] is **granted**.

SO ORDERED AND ADJUDGED on this, the 26th day of March, 2010.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE